UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIM LORN RICE,

    Plaintiff,     Case No. 13–12456

v.     Hon. Stephen J. Murphy, III
    Mag. Judge Laurie J. Michelson

WAYNE COUNTY TREASURER,
RAYMOND WOJTOWICZ,
DAVID SZYMANSKI, RICHARD G. STANLEY,
CHIEF JUDGE VIRGIL SMITH,
JUDGE DAVID ROBINSON, METRO PROPERTIES,
and LORYN FRABUTT,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON (1) MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) IN LIEU OF ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT BY DAVID ROBINSON [17] AND (2) MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT BY VIRGIL SMITH [20, 23]**

As a result of unpaid property taxes, Defendant Wayne County Treasurer foreclosed on property in Detroit, Michigan that had been deeded to *pro se* Plaintiff Kim Lorn Rice ("Plaintiff" or "Rice"). Despite Plaintiff's claim that he sent the Treasurer payment for the back taxes, the foreclosure was upheld by Wayne County Circuit Court Chief Judge Defendant Virgil C. Smith, Jr. ("Smith"). The property was subsequently sold to Defendant Metro Properties Management ("Metro Property") which brought eviction proceedings against Plaintiff in 36th District Court. Defendant Judge David Robinson ("Robinson") signed the Judgment of Possession. Plaintiff did not take any appeals in state court. Instead he brought this federal-court action alleging that the Wayne County Treasurer, Metro Property, and Judges Robinson and Smith conspired to deprive him of his constitutional rights. (Dkt. 8, Am. Compl.) He also alleges state-law claims and violations of

various criminal statutes. (*Id.*)

All pretrial proceedings have been referred to this Court. (Dkt. 21.) Presently before the Court is Judge Robinson's Motion to Dismiss (Dkt. 17) and Judge Smith's Motion to Dismiss and/or for Summary Judgment (Dkt. 20). These judges claim that they are entitled to judicial immunity. Plaintiff has responded to their motions (Dkts. 23, 39)[1] and the Court finds oral argument to be unnecessary. *See* E.D. Mich. LR 7.1(f). Having carefully reviewed the relevant pleadings and briefing, the Court agrees with Judges Smith and Robinson that the Court lacks subject-matter jurisdiction over Plaintiff's claims against them and, further, that those claims are precluded by the doctrine of judicial immunity. Accordingly, this Court RECOMMENDS that the Judicial Defendants' motions to dismiss be GRANTED.

## I.     BACKGROUND

While the specific allegations in Plaintiff's Amended Complaint are not entirely clear (Dkt. 8, Am. Compl. at 1-5), he attaches numerous documents and references court proceedings that provide additional factual detail. These attachments include an affidavit from Plaintiff, an affidavit from Loren Georgette Rice ("LGR"), quit claim deeds, emails, other affidavits pertaining to the property at issue, and records from the underlying state court foreclosure and eviction proceedings. (*Id.* at Pg ID 88-132.) From these materials, Plaintiff appears to be alleging the following:

In October 2009, the LGR Trust purchased three Detroit properties at a Wayne County tax auction. (Dkt. 8, Am. Compl., Ex. A, LGR Aff. at ¶ 3.) This included the property at 18664 Cherrylawn, Parcel ID 16032968 (the "Cherrylawn property") that was transferred to the LGR Trust

---

[1] On August 27, 2013, Plaintiff filed a document entitled "Motion in Opposition of Defendants Motion for Dismissal and/or for Summary Judgment." (Dkt. 23.) The Court is treating this filing as Plaintiff's Response to Judge Smith's motion.

via a quit claim deed on November 16, 2009. (*Id*.) Part of the mission of LGR Trust was to help rebuild Detroit communities by purchasing and rehabilitating distressed properties and eventually gifting them to solid tenants. (*Id*. at ¶ 1.) The Trust's Board of Trustees (including Trustee Loren Georgette Rice) enlisted Plaintiff to serve as the property manager. (*Id*.)

In January 2010, the LGR Trust gave Plaintiff legal authorization to conduct administrative tasks necessary to maintain the three Detroit properties—including disputing property tax bills. (*Id*. at ¶ 5.) In September 2010, the Wayne County Treasurer's Office sent the LGR Trust a Notice of Property Tax Delinquency for the Cherrylawn property. (Am. Compl., Ex. I.) The Notice advised that "the 2009 property taxes for the listed property remain unpaid." (*Id*.) In June 2011, the Wayne County Treasurer filed a Petition in Wayne County Circuit Court for Foreclosure of Certain Lands for Unpaid Property Taxes, including the Cherrylawn property. (Am. Compl., Ex. C; Smith Resp., Ex. 3, Register of Actions.) The case was assigned to Judge Smith. (Register of Actions at p. 2.) The court issued a Notice of Show Cause Hearing, Judicial Foreclosure Hearing, and Request for Payment. (Am. Compl. at ¶ 3, Ex. C.) The Notice advised of the Petition, that the Cherrylawn property had been forfeited due to unpaid taxes, that Judge Smith would hold a judicial foreclosure hearing on February 15, 2012, and that failure to file an objection to the Petition could result in a judgment of foreclosure. (*Id*. at Ex. C.)

It appears that the LGR Trust filed an objection and Plaintiff went to the February 15, 2012 hearing. (Am. Compl. at ¶ 3.) Plaintiff's Amended Complaint makes clear that the LGR Trust was confused as to whether they were responsible for the entirety of the 2009 property taxes when they only acquired the property at the end of that year, i.e., in November 2009. Plaintiff apparently raised this issue with the Deputy Treasurer, Defendant David Szymanski, at the hearing. (*Id*.) The Deputy

Treasurer advised Plaintiff that they should not be responsible for the 2009 taxes and asked Plaintiff to "email him the documents and he would handle it." (*Id*.) Plaintiff then left the hearing in order to locate the requested documents. (*Id*. at ¶ 3, Ex. D.) Plaintiff thus missed the opportunity to dispute the validity of the unpaid taxes before Judge Smith. (*Id*. at ¶ 4.)

On March 9, 2012, Plaintiff emailed to Szymanski "information concerning the property we purchased at [the] County auction in 2009." (Am. Compl. at Ex. L.) Szymanski responded:

> Now that you provide this[,] it is all clear. You purchased and received the property in 2009. The terms of sale specifically indicate that you are responsible for the 2009 taxes. All the documentation supports that conclusion. Am I missing something else?

(*Id*.) The parties then engaged in further email communication on March 29, 2012. Plaintiff expressed his surprise that the LGR Trust was responsible for the full year of taxes when they did not have access to the property until December 2009. (*Id*.) Plaintiff then inquired:

> If we are responsible for all of 2009 [taxes] then my question now is, is there a way to stop the county foreclosure and physical confiscation of the property for 90 days? We can pay all back tax obligations within 90 days. We then plan to gift the properties to occupants as we no longer wish to own property in this market. This would save the occupants from having to move and enable us to claim the cost as a charitable deduction as opposed to a [loss] due to foreclosure. Please advise.

(*Id*.) Szymanski responded that

> I can certainly accommodate this request. While we have taken a judgment on the property we will take no further action until July 1. This will allow you the 90 days you have requested. If you can pay the taxes in full by then you can transfer the property to the occupants and accomplish your goals. I do appreciate your situation and certainly appreciate your efforts to assist the occupants in the manner you have chosen.

(*Id*.)

4

As the emails suggest, in the last quarter of 2011, the LGR Trust decided to completely divest from the Detroit market. (Am. Compl. at ¶ 6.) As part of the divestiture, on March 30, 2012, the LGR Trust donated the Cherrylawn property to Plaintiff, who apparently had been residing there, via a quit claim deed. (Am. Compl. at ¶ 5, Ex. E, and Rice Aff. at ¶ 8.) On that same date, a judgment of foreclosure was entered against the property. (Dkt. 17, Robinson Mot. to Dismiss, Ex. B.) Plaintiff alleges that on April 23, 2012, well within the payment time frame allowed by Szymanski, Yvette Gray mailed for him a check for the back taxes; the $13,837.47 check was written out to the Wayne County Treasurer. (Am. Compl. at ¶¶5, 12-13, Ex. J, Gray Aff., Ex. K.) "[H]owever, the Treasurer denies receipt of the payment." (Am. Compl. at ¶ 5.) Plaintiff does not allege, nor does he provide any supporting attachments, that the check was cashed or that the corresponding account was debited.

In September 2012, Plaintiff filed a petition to set aside the judgment of foreclosure. (Am. Compl. at ¶ 6, Ex. F.) Judge Smith heard oral argument on November 16, 2012, and entered an order denying the petition on November 20, 2012. (Am. Compl. at ¶ 9; Smith Mot. to Dismiss, Exs. 2 and 3.) Judge Smith subsequently issued a written opinion on January 30, 2013, denying Plaintiff's motion for reconsideration. (Smith Mot. to Dismiss at Ex. 4.)[2]

In the interim, on October 15, 2012, the Wayne County Treasurer had conveyed the Cherrylawn property to Metro Property via a quit claim deed. (Robinson Mot. to Dismiss at Ex. C.)

---

[2] Judge Smith found that "the taxes remain unpaid" even though Plaintiff claimed he sent a check to the Treasurer for the delinquent taxes. The court noted that the Treasurer had no record of receipt of the check, or its deposit, and the UCC's accord and satisfaction provision does not apply to the Michigan Tax Act. (*Id*. at 3-4.) Judge Smith further rejected Plaintiff's due process argument as well as his argument that Judge Smith could not present proof, at the time of oral argument, of having taken a current oath of office. (*Id*. at 4-10.)

19. On December 12, 2012, Metro Property filed a summary proceeding in Michigan's 36th District Court for possession of the Cherrylawn property – i.e., to evict Plaintiff. (Am. Compl., Pl. Aff. at ¶ 13, Ex. M.) The case was assigned to Judge Robinson. Following a hearing on January 16, 2013, Judge Robinson entered a Judgment of Possession in favor of Metro Property. (Am. Compl. at Ex. N.) He subsequently signed an Order for Escrow requiring Plaintiff to deposit certain rent payments. (*Id.* at Ex. O.)

Plaintiff claims that he "[a]ppealed the Judgment of the district court and [now] seeks redress in this Court." (Pl. Aff. at ¶ 20.) The Wayne County Circuit Court docket sheets indicate that the appeal from the judgement of possession was closed on June 6, 2013, due to "removal to federal court." (Robinson Mot. to Dismiss at Ex. F.) This was the day after Plaintiff filed this lawsuit against the Wayne County Treasurer and Deputy Treasurer, Judges Smith and Robinson, and Metro Property. (Dkt. 1, Compl.) Plaintiff alleges conspiracy (to commit larceny) and civil rights violations pursuant to 42 U.S.C. §§ 1983 and 1985, denial of due process, violations of criminal conspiracy and mail fraud statutes, and state-law claims for malicious abuse of prosecution and intentional infliction of emotional distress. (Am. Compl., Counts 1-8.)

Judges Smith and Robinson contend that Plaintiff has failed to state a claim against them because they are entitled to judicial immunity. In his response briefs, Plaintiff simply argues that his complaint presents sufficient facts that indicate violations of law have occurred and that judicial immunity has been "lost," again referencing Judge Smith's lack of a filed oath. (Dkt. 23, Smith Resp. at 2-3; Dkt. 39, Robinson Resp. at 2.)

## II.     ANALYSIS

### A.     Standard of Review

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all factual allegations as true. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). The factual allegations must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, the Rule 12(b)(6) standard requires that a plaintiff provide "enough facts to state a claim to relief that is plausible on its face." *Id*. at 569. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Bare allegations without a factual context do not create a plausible claim. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 374 (6th Cir. 2011). A complaint must "contain[] direct or inferential allegations respecting all the material elements under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Moreover, "the availability of absolute judicial immunity in the context of Rule 12(b)(6) motion to dismiss presents a question of law" and Judges Smith and Robinson bear the burden of establishing that such immunity is warranted. *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004).

### B.     Subject Matter Jurisdiction

In addition to judicial immunity, Judge Smith asserts that the *Rooker-Feldman* doctrine bars Plaintiffs' claims against him. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Because this issue implicates the court's subject matter jurisdiction, the court addresses it first.

Fed. R. Civ. P. 12(b)(1) authorizes this court to dismiss a complaint for lack of subject matter

jurisdiction. The *Rooker-Feldman* doctrine prohibits federal courts, other than the United States Supreme Court, from performing appellate review of state-court rulings. *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008); *see also Givens*, 278 F. App'x 607, 608-09 (6th Cir. 2008) ("Pursuant to [the *Rooker-Feldman*] doctrine, lower federal courts lack subject matter jurisdiction to review the decisions of state courts."). The Supreme Court has explained that the doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). In the wake of *Exxon*, the Sixth Circuit has "distinguished between plaintiffs who bring an impermissible attack on a state court judgment — situations in which Rooker-Feldman applies — and plaintiffs who assert independent claims before the district court — situations in which Rooker-Feldman does not apply." *Lawrence*, 531 F.3d at 368. In *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006), the Appellate Court further explained that the pertinent inquiry after *Exxon* is whether the "source of the injury" upon which plaintiff bases her federal claim is the state court judgment:

> The inquiry then is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the Rooker-Feldman doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*Id.* at 394.

The source of Plaintiffs' claims against Judges Smith and Robinson are their judicial decisions. Following foreclosure proceedings before Judge Smith in Wayne County Circuit Court, Metro Property obtained a Judgment of Possession and escrow order for the Cherrylawn property

from Judge Robinson in 36th District Court. Plaintiff did not pursue any state court appeals. Instead, he brought this action in federal court seeking a replevin or redelivery of the Cherrylawn property and money damages against Defendants Smith and Robinson. (*Id*. at p.5 and Counts 1-8.) Plaintiff challenges Judge Smith's foreclosure ruling as "null and void" because he "did not have a current Oath of Office" (Am. Compl., ¶ 9) and Judge Robinson's escrow order for failing to identify the movant (*id*. at ¶ 13). In other words, Plaintiff claims that Judge Smith's and Judge Robinson's rulings were improper and caused him to lose the Cherrylawn property. To agree with Plaintiff would be to hold that Judge Smith and Judge Robinson erred. In other words, any relief in this action could "only be predicated upon a conviction that the state court proceeding was wrong." *Hutcherson v. Lauderdale County, Tennessee*, 326 F.3d 747, 756 (2003). Yet, this is precisely the outcome that *Rooker-Feldman* prohibits. *See Hall v. Callahan*, No. 12-3708, 727 F.3d 450, 2013 WL 2364140 (6th Cir. May 31, 2013) (finding plaintiffs' claim that they were injured by the actions of a presiding judge during the state court proceeding to "directly implicate[] *Rooker–Feldman* concerns. Indeed, the *McCormick* court explicitly noted that errors made by state court judges are barred from consideration."); *Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458, 460-61 (6th Cir. 2003) ("[W]hen granting relief on the federal claim would imply that the state-court judgment on the other issues was incorrect, federal courts do not have jurisdiction."); *Stanton v. Hutchins*, No. 10-cv-74, 2010 WL 882822 (W.D. Mich. Mar.8, 2010) ("Nor is this court likely to hold that [plaintiff can] circumvent the Rooker-Feldman jurisdictional bar by arguing that the Branch County Circuit Court decision was not merely wrong but void ab initio." (citing *Searcy v. Clawson*, 70 F. App'x. 907, 907-08 (8th Cir. 2003))).

The Court therefore lacks subject-matter jurisdiction over Plaintiffs' claims against Judges

Smith and Robinson, and therefore those claims should be dismissed without examining their merits.

**B.     Immunity**

Even if *Rooker-Feldman* does not present a jurisdictional bar, Plaintiff's claims for damages against the Judicial Defendants in their official capacities are barred by Eleventh Amendment immunity. Neither Congress nor the State of Michigan has waived Michigan's Eleventh Amendment immunity from suits brought under 42 U.S.C. § 1983. *Kentucky v. Graham*, 473 U.S. 159, 169 n.17, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004). Official-capacity suits are, in reality, suits against the relevant office, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), and state courts are agencies of the state, *see Pucci v. Nineteenth District Court*, 628 F.3d 752, 764 (6th Cir. 2010) ("The Nineteenth District Court (as with Michigan trial-level district courts generally) is entitled to the immunity protections of the Eleventh Amendment, and all federal claims against it must be dismissed.").

To the extent Plaintiff is suing the Judicial Defendants in their personal capacities for their failure to set aside the foreclosure and entry of the escrow order, his claims fare no better. As a general rule, judges are immune from suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Mann v. Conlin*, 22 F.3d 100, 103 (6th Cir. 1994) (A judge performing his judicial functions is entitled to immunity from a suit seeking monetary damages.). The Supreme Court has specifically held that state judges are absolutely immune from § 1983 suits arising out of their performance of judicial functions. *Briscoe v. LaHue*, 460 U.S. 325 (1983); *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Thus, "[i]t is clear that judges in courts of limited jurisdiction (such as Michigan district judges) are entitled to the protection of the immunity doctrine." *Hewett v. City of Grand Rapids*,

No. 12-998, 2012 U.S. Dist. LEXIS 159787, at *9 (W.D. Mich. Oct. 15, 2012) (citing *White v. Gerbitz*, 892 F.2d 457, 462 (6th Cir. 1989)), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 158755 (W.D. Mich., Nov. 6, 2012). This far-reaching protection "is justified 'by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability.'" *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997) (quoting *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993)). As such, judicial immunity applies even to judicial acts performed maliciously, corruptly, in bad faith, or in error. *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004). Indeed, there are only two exceptions to judicial immunity: a judge is not immune from suits for acts that are (1) not judicial in nature or (2) performed without jurisdiction. *Mireles*, 502 U.S. at 11-12; *Savoie v. Martin*, 673 F.3d 488, 492 (6th Cir. 2012). Plaintiff's allegations fail to implicate either of these exceptions.

First, an act is judicial in nature when "it is a function normally performed by a judge" and the parties "dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)*; see Ireland v. Tunis*, 113 F.3d 1435, 1441 (6th Cir. 1997). In examining the functions normally performed by a judge, the Sixth Circuit has recognized that the paradigmatic judicial act is the resolution of a dispute between parties who have invoked the jurisdiction of the court. *Brookings v. Clunk*, 389 F.3d 614 (6th Cir. 2004). "The touchstone for judicial immunity is the function of dispute resolution, or of authoritatively adjudicating private rights." *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997). This is precisely what occurred here – Judge Smith resolved the Cherrylawn property foreclosure action and Judge Robinson resolved the summary proceeding for possession filed against Plaintiff. At all times, Plaintiff dealt with the Judicial Defendants in their capacities as judges. Even assuming, for the purpose of argument, that Judge

11

Smith's denial of Plaintiff's motion to set aside the foreclosure and Judge Robinson's entry of the judgment of possession and escrow order were unjustified or erroneous, their acts were no less judicial. *See Brookings*, 389 F.3d at 617; *see also Stump*, 435 U.S. at 356-57 (stating that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority"). Accordingly, the first exception to judicial immunity does not apply.

The second exception is likewise inapplicable. For the exception to apply, a judge must have acted "in the clear absence of all jurisdiction," as opposed to merely "in excess of authority." *Tunis,* 113 F.3d at 1441. "A judge acts in the clear absence of all jurisdiction only when the matter upon which he acts is clearly outside the subject matter of the court over which he presides." *Johnson v. Turner*, 125 F.3d 324, 334 (6th Cir. 1997). Michigan's Wayne County Circuit Court is a "trial court of general jurisdiction" and has "original jurisdiction in all matters not prohibited by law." *See* Mich. Const. 1963, art. VI, §§ 1, 13; Mich. Comp. Laws § 600.601. Michigan law affirmatively invests the circuit court with original jurisdiction "to hear and determine all civil claims and remedies," which includes the civil foreclosure proceeding involving the Cherrylawn property. *See* Mich. Comp. Laws § 600.605. Michigan law further provides that summary proceedings for possession of premises fall within the exclusive jurisdiction of the state district court. Mich. Comp. Laws §600.5704 *et seq*. In presiding over these cases, the Judicial Defendants were clearly acting within the scope of their authority.

Plaintiff's contention that Judge Smith did not have a recent oath of office on file (with the county clerk or secretary of state) is unavailing. Under Mich. Comp. Laws § 168.420, "[e]very person elected to the office of judge of the circuit court, before entering upon the duties of his office,

shall take and subscribe to the oath as provided in section 1 of article 11 of the state constitution, and file the same with the secretary of state and a copy with each county clerk in his circuit." Plaintiff's Amended Complaint and public records make clear that Judge Smith took (and filed) the oath in 2004 and took another on December 11, 2012. (Am. Compl., Ex. H; Smith Resp. Ex. 4, Reconsid. Op. at 8-9.) Plaintiff has presented no authority that the failure to properly file the 2011 oath deprived Judge Smith of jurisdiction to handle the foreclosure case.

To the contrary, the Michigan Court of Appeals has rejected such an argument. In *Donkers v. Livonia Police Dept.*, No. 262348, 2005 WL 3239468 (Mich. Ct. App. Dec. 1, 2005), the plaintiff argued that a Wayne Circuit Judge was not authorized to function because neither the secretary of state nor the county clerk had a copy of her oath on file. *Id.* at \*7-8. The court rejected plaintiff's argument, holding that the "provision pertaining to filing is not a condition precedent to assumption and exercise of duties of a circuit court judge." *Id.* at \*8. The Court adopted the Washington Court of Appeals' interpretation of a similar statute:

> The clause, 'which oath shall be filed,' does not relate to the antecedent clause 'before entering upon the duties of his office.' Nor does it relate to the list of judicial requirements connected by "ands" ('take and subscribe and oath'). Thus, the failure to file the oath did not disqualify the judges from office.

*Id.* (quoting *Washington v. Stephenson*, 89 Wash. App. 794, 950 P.2d 38, 45 (1998)). The court reached a similar conclusion concerning Michigan constitutional provision, Art. 11, §1: "The focus of the constitutional provision is the taking of the oath. Filing of the oath is a procedural requirement, the failure to comply with, standing alone, does not serve to void a judge's authority to serve in their elected capacity." *Id.* at \*9. Additionally, "[t]he de facto officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later

13

discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 177, 180, 115 S. Ct. 2031, 132 L. Ed. 2d 136 (1995); *see also Abbott v. Smolenski*, No. 13-cv-655, 2013 WL 3806654, at *2 (W.D. Mich. July 22, 2013) ("Although Plaintiff alleges that Defendant lacked jurisdiction because she failed to complete her Oath of Office, . . . that alleged failure did not deprive her of jurisdiction, because of the de facto officer doctrine. Accordingly, Defendant is absolutely immune from liability . . . ."); *Donkers*, 2005 WL 3239468 at *9 (holding, in the alternative, that, "even if [the trial judge] acted in a de facto capacity, her authority to act is neither diminished nor defective").[3]

In the absence of an applicable exception, Judges Smith and Robinson are entitled to absolute judicial immunity from Plaintiff's claims seeking monetary relief.

### C. Failure to State a Claim

In addition to the judicial immunity bar, Plaintiff's Complaint fails to state a viable federal cause of action. As the Sixth Circuit ruled in a similar case:

> The dismissal of [plaintiff's] claim under § 1985(3) was also proper because she did not show that the defendants were motivated by gender bias or some other class-based, invidiously discriminatory animus. *See Maki v. Laakko*, 88 F.3d 361, 367 (6th Cir. 1996), *cert. denied*, 519 U.S. 1114, 136 L. Ed. 2d 842, 117 S. Ct. 956 (1997).

---

[3] Likewise, the Judicial Defendants are entitled to absolute immunity with respect to Plaintiff's state law claims. Michigan law provides that a "judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority." Mich. Comp. Laws § 691.1407(5). The Court has already determined that the Judicial Defendants were, at all relevant times, acting within the scope of their judicial authority. Thus, Plaintiff's state tort claims are also barred. *See Hall v. Tolstedt*, No. 12-12064, 2013 U.S. Dist. LEXIS 35153, at *12, n.5 (E.D. Mich. Mar. 14, 2013) ("this discussion of federal [judicial immunity] law applies with equal force to Plaintiff's state-law claims and similarly bars such claims."). These immunity doctrines recognize that when a plaintiff believes that a judge has erred, the proper recourse is to appeal, not to sue.

14

> Moreover, the district court properly dismissed the criminal conspiracy claims that [plaintiff] raised under 18 U.S.C. §§ 241-242, as these statutes do not provide a basis for civil liability. *See Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam).

*Krajicek v. Justin*, No. 98-1249, 1999 U.S. App. LEXIS 5383, at *4 (6th Cir. Mar. 23, 1999); *see also United States v. Oguaju,* 76 F. App'x. 579, 581 (6th Cir. 2003) (plaintiff's claims pursuant to 18 U.S.C. § 241 or 242 were properly dismissed because plaintiff "has no private right of action under either of these criminal statutes."). Plaintiff also has no private right of action for his mail fraud claims. *See Morganroth & Morganroth v. DeLorean,* 123 F.3d 374, 386 (6th Cir. 1997) (no private cause of action lies for alleged violations of federal criminal mail and wire fraud statutes); *Deasy v. Louisville & Jefferson County Metro. Sewer Dist.*, 47 F. App'x 726, 728 (6th Cir. 2002) ("Mail fraud is a criminal offense for which there is no private right of action.").

### III.   CONCLUSION AND RECOMMENDATION

Under the *Rooker-Feldman* doctrine, the federal courts lacks subject-matter jurisdiction over Plaintiff's claims and thus this Court RECOMMENDS that Plaintiff's claims against Judge Smith and Judge Robinson be DISMISSED WITHOUT PREJUDICE. But if this Court has jurisdiction, Plaintiff has failed to state a claim upon which relief may be granted against Judge Smith and Judge Robinson and Plaintiff's claims against them should be DISMISSED WITH PREJUDICE.

### IV.   FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections,

but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                                        s/Laurie J. Michelson
                                                        LAURIE J. MICHELSON
                                                        UNITED STATES MAGISTRATE JUDGE

Dated: October 10, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 10, 2013.

                                                        s/Jane Johnson
                                                        Deputy Clerk