UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIM LORN RICE,

    Plaintiff,                                         Case No. 13-12456

v.                                                 Honorable Stephen J. Murphy, III
                                                     Magistrate Judge Laurie J. Michelson

WAYNE COUNTY TREASURER,
RAYMOND WOJTOWICZ,
DAVID SZYMANSKI, RICHARD G. STANLEY,
CHIEF JUDGE VIRGIL SMITH,
JUDGE DAVID ROBINSON, METRO PROPERTIES,
and LORYN FRABUTT,

    Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT
## WAYNE COUNTY DEFENDANTS' MOTION TO DISMISS
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) [27]

Pro se Plaintiff Kim Lorn Rice brought this federal-court action alleging that Defendants conspired to deprive him of his constitutional rights. He also alleges state-law claims and violations of various criminal statutes. The claims arise out of Defendant Wayne County Treasurer's tax foreclosure on a property in Detroit, Michigan. Plaintiff's claims against two state court judges have been dismissed. (Dkt. 43.) Presently before the Court for report and recommendation (Dkt. 21) is the Wayne County Defendants' Motion to Dismiss (Dkt. 27). Plaintiff has responded to the motion (Dkt. 40) and the Court finds oral argument to be unnecessary. *See* E.D. Mich. LR 7.1(f). For the reasons that follow, this Court lacks subject matter jurisdiction over Plaintiff's claims. Accordingly, the Court RECOMMENDS that the Wayne County Defendants' Motion to Dismiss be GRANTED.

**I.    BACKGROUND**

The following factual allegations are taken from the Amended Complaint and its attached exhibits.[1] (Dkt. 8, Am. Compl.) These allegations are assumed true for the purpose of deciding this motion.

LGR Trust is an entity with an address in Lithonia, Georgia, (*see* Am. Compl. Exs. B, E, I) that was formed in part "to help rebuild Detroit communities by purchasing distressed properties, rehabbing distressed properties, putting solid tenants in the properties, and eventually gifting the properties to those tenants" (Am. Compl. Ex. A ¶ 2). In October 2009, LGR Trust purchased three Detroit properties at a Wayne County tax auction, including the property at 18664 Cherrylawn, Parcel ID 16032968 ("the Cherrylawn Property"). (Am. Compl. ¶¶ 2, 3; Am. Compl. Ex. A ¶ 3.) The Cherrylawn Property was transferred to the LGR Trust via a quit-claim deed on November 16, 2009. (Am. Compl. ¶¶ 2, 3; Am. Compl. Ex. A ¶ 3; Am. Compl. Ex. B.) The Trust's Board of Trustees enlisted Plaintiff to serve as property manager for the three properties. (Am. Compl. Ex. A ¶¶ 1, 4.) In January 2010, the LGR Trust gave Plaintiff legal authorization to conduct administrative tasks necessary to maintain the properties, including disputing property tax bills. (*Id.* 5; Am. Compl. ¶ 1.)

In September 2010, the Wayne County Treasurer's Office sent the LGR Trust a Notice of Property Tax Delinquency for the Cherrylawn property. (Am. Compl. Ex. I.) The Notice stated that

---

[1] In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to the Plaintiff's claims, (2) matters of which a court may properly take notice, and (3) public documents. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007); *Amini* v. *Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001). The court's consideration of these documents does not require conversion of the motion to one for summary judgment. *Greenberg* v. *Life Ins. Co. of Virginia,* 177 F.3d 507, 514 (6th Cir. 1999).

"the 2009 property taxes for the listed property remain unpaid." (*Id.*) In 2011, the Wayne County Treasurer filed a petition in Wayne County Circuit Court for foreclosure of the Cherrylawn property for unpaid property taxes. (Am. Compl. Ex. C.) LGR Trust contested the petition by written objections and Plaintiff went to a February 15, 2012 hearing. (Am. Compl. at ¶ 3.) At the hearing, Plaintiff asked Wayne County's Deputy Treasurer, Defendant David Szymanski, whether the Trust was required to pay the 2009 taxes when it did not have a deed or access to the property until November 2009. (*Id.*) Szymanski said, "No you shouldn't" and told Plaintiff to "send or email him the documents and he would handle it." (*Id.*; *see also* Am. Compl. Ex. D.) Based on that conversation, Plaintiff "left the mass hearing to locate the documents requested by the Deputy Treasurer" without seeing a judge. (*Id.*) Plaintiff "missed the opportunity to dispute the validity of the tax" by following Szymanski's direction. (Am. Compl. ¶ 4.)

On March 6, 2012, Plaintiff emailed Szymanski the documents he requested. (Am. Compl. ¶ 4; Am. Compl. Ex. L.) He stated in the email, "We have inquired about this previously and objected to the tax obligation for 2009," and "[e]ach time we got no answer as to the reason why we had the obligation for that year." (Am. Compl. Ex. L at Pg ID 117.) Szymanski responded on March 9, 2012:

> Now that you provide this it is all quite clear. You purchased and received the property in 2009. The terms of sale specifically indicate that you are responsible for the 2009 taxes. All the documentation supports that conclusion. Am I missing something else?

(*Id.* at Pg ID 119.) On March 29, 2012, Plaintiff expressed surprise that the LGR Trust was responsible for the full year of taxes when they did not have access to the property until December 2009, and asked:

> If we are responsible for all of 2009 then my question now is, is there

> a way to stop the county foreclosure and physical confiscation of the property for 90 days? We can pay all back tax obligations within 90 days. We then plan to gift the properties to occupants as we no longer wish to own property in this market. This would save the occupants from having to move and enable us to claim the cost as a charitable deduction as opposed to a los[s] due to tax foreclosure. Please advise.

(*Id.* at Pg ID 120.) Szymanski responded that same day:

> I can certainly accommodate this request. While we have taken a judgment on the property we will take no further action until July 1. This will allow you the 90 days you have requested. If you can pay the taxes in full by then you can transfer the property to the occupants and accomplish your goals. I do appreciate your situation and certainly appreciate your efforts to assist the occupants in the manner you have chosen.

(*Id.*)

In the last quarter of 2011, the LGR Trust decided to completely divest from the Detroit market. (Am. Compl. Ex. A ¶ 6.) As part of the divestiture, on March 30, 2012, LGR Trust donated the Cherrylawn property to Plaintiff, who was then the tenant, via a quit-claim deed. (Am. Compl. ¶ 5; Am. Compl. Ex. A ¶ 8; Am. Compl. Ex. E.) On April 23, 2012, Yvette Gray as notary acceptor for Plaintiff sent a check for $13,837.47, the balance of delinquent taxes, by certified mail to the Wayne County Treasurer. (Am. Compl. Ex. J; *see* Am. Compl. ¶ 12; Am. Compl. Pl. Aff. ¶ 1; Am. Compl. Ex. K.) On June 1, 2012, Gray wrote in an "Affidavit of Non-Response" addressed to Plaintiff: "To date I have not received any response from the Wayne County Treasurer Raymond J. Wojtowicz regarding the payment I mailed for you by Certified Mail No. 70100290000081275073 on April 23, 2012." (Am. Compl. Ex. J.) The payment instrument EFT was not returned to Plaintiff and Plaintiff did not receive notice of credit to his account for the Cherrylawn Property, although he corresponded with the Treasurer's office twice. (Am. Compl. Pl. Aff. ¶¶ 2–4.)

In September 2012, after seeing the Cherrylawn Property in the newspaper, Plaintiff filed

a petition in Wayne County Circuit Court to set aside the judgment of foreclosure. (Am. Compl. ¶ 6; Am. Compl. Pl. Aff. ¶ 6; Am. Compl. Ex. F.) Plaintiff's petition was denied at a hearing on November 16, 2012. (Am. Compl. ¶ 9; Am. Compl. Pl. Aff. ¶ 10.) Plaintiff petitioned the court for reconsideration in December 2012. (Am. Compl. Pl. Aff. ¶ 11.) He did not receive a copy of the opinion and order on his petition for reconsideration in time for an appeal by right. (Am. Compl. Pl. Aff. ¶ 16.)

On December 12, 2012, Metro Property filed a complaint in Michigan's 36th district court to recover possession of the Cherrylawn Property, which Metro Property had purchased at auction on September 22, 2012. (Am. Compl. ¶ 14; Am. Compl. Ex. M.) Plaintiff received the summons and complaint near the close of business on January 9, 2013, so he was not able to file a response seven days before the January 16 hearing. (Am. Compl. Pl. Aff. ¶ 17.) He filed an answer on January 11. (Am. Compl. ¶ 19.) Metro Property was granted possession on January 16, 2013. (Am. Compl. ¶ 15; Am. Compl. Ex. N.) On February 7, 2013, the court ordered Plaintiff to pay rent to be held in escrow. (Am. Compl. ¶ 13; Am. Compl. Ex. O.) Metro Property placed notices on the door of the Cherrylawn Property announcing that it was being illegally occupied. (Am. Compl. ¶ 14; Am. Compl. Ex. P.)

Plaintiff filed this action on June 5, 2013. (Dkt. 1.)

## II. ANALYSIS

### A. Standard of Review

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all factual allegations as true. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). The factual allegations

must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, the Rule 12(b)(6) standard requires that a plaintiff provide "enough facts to state a claim to relief that is plausible on its face." *Id*. at 569. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Bare allegations without a factual context do not create a plausible claim. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 374 (6th Cir. 2011). A complaint must "contain[] direct or inferential allegations respecting all the material elements under some viable legal theory."*Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

When applying these standards to a complaint drafted by a *pro se* plaintiff, a court must be mindful that allegations in the complaint are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nonetheless, "the administration of justice is not wellserved by the filing of premature, hastily drawn complaints," and even a *pro se* litigant "must conduct enough investigation to draft pleadings that meet the requirements of federal rules." *Burnett v. Grattan*, 468 U.S. 42, 50 & n.13 (1984). Even "the lenient treatment generally accorded to *pro se* litigants has limits," and *pro se* litigants are "not automatically entitled to take every case to trial." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

### B.     Subject Matter Jurisdiction

Defendants argue that the Amended Complaint must be dismissed for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. (Dkt. 27, Mot. at 4–5.) The *Rooker-Feldman* doctrine prohibits federal courts, other than the United States Supreme Court, from performing appellate review of state-court rulings. *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008); *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v.*

*Feldman*, 460 U.S. 462 (1983). The doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Sixth Circuit has explained that the pertinent inquiry is whether the "source of the injury" upon which plaintiff bases her federal claim is the state court judgment, rather than the actions of a third party. *McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006). District Judge Stephen J. Murphy, III, has previously ruled that the *Rooker-Feldman* doctrine applies in this case. (*See* Dkt. 43.)

Plaintiff argues that "[t]he Rooker-Feldman doctrine does apply **after** the court reviews the violation of Rice's rights." (Dkt. 40, Pl.'s Resp. at 1.) Plaintiff is incorrect. If the court determines that it does not have subject matter jurisdiction under the *Rooker-Feldman* doctrine, the court does not have authority to review any alleged violation of rights and must dismiss the action without reviewing the merits of the claims. *See* Fed. R. Civ. P. 12(h)(3).

The Amended Complaint requests "replevin regarding the subject property" and "to clear the record of the subject matter case, and close and settle the cases." (Am. Compl. at 5, 14.) Plaintiff's claims, for violation of his rights to equal protection and due process and for various torts including malicious abuse of process and intentional infliction of emotional distress, essentially allege that the foreclosure of the Cherryhill Property was wrongful. (Am. Compl. at 6–14.) But the foreclosure of Plaintiff's property was the subject of multiple state-court proceedings before this action was filed. The Wayne County Circuit Court entered a judgment of foreclosure and denied Plaintiff's petition for reconsideration in which he argued that he was deprived of due process. (*See* Dkt. 20-5, *In re Petition of Wayne Cty. Treasurer for Foreclosure*, No. 11-007010-CH, Opinion and

Order (Wayne Co. Circuit Ct. Jan. 30, 2013).) Plaintiff's motion to vacate the judgment of foreclosure and his appeal to the Michigan Court of Appeals were denied as untimely. (*See* Dkt. 20-9, *In re Petition of Wayne Cnty. Treasurer for Foreclosure*, No. 315693, Order (Mich. Ct. Appeals Apr. 25, 2013).) And Michigan's 36th district court granted possession of the property to Metro Properties. (*See* Am. Compl. Ex. N.) Plaintiff's claims are precluded by the *Rooker-Feldman* doctrine because they "succeed[] only to the extent that the state court wrongly decided the issues before it." *Hutcherson v. Lauderdale Cnty., Tennessee*, 326 F.3d 747, 756 (6th Cir. 2003); *see also Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458, 460 (6th Cir. 2003) ("[W]hen granting relief on the federal claim would imply that the state-court judgment on the other issues was incorrect, federal courts do not have jurisdiction.").

The Sixth Circuit applied *Rooker-Feldman* in a factually similar case. In *Givens v. Homecomings Financial*, 278 F. App'x 607 (6th Cir. 2008), Givens defaulted on his mortgage and JP Morgan Chase foreclosed on his home. 278 F. App'x at 608. After a sheriff's sale, JP Morgan Chase brought an eviction action in Michigan's 36th District Court, which granted possession to JP Morgan Chase. *Id.* Givens appealed that judgment to the Wayne County Circuit Court, but the appeal was dismissed due to his failure to file a transcript of the lower court proceedings. *Id.* Givens filed a federal court action alleging claims for violation of the Fair Debt Collection Practices Act, conspiracy, intentional infliction of emotional distress, and racketeering. *Id.* The Sixth Circuit affirmed the district court's dismissal of the case under Rooker-Feldman "[b]ecause Givens is effectively attempting to appeal from the state order granting possession." *Id.*

Other courts in this district have applied the *Rooker-Feldman* doctrine in similar cases. For example, in *Anderson v. County of Wayne*, the court stated:

> Plaintiffs' injury stems from the state court judgments dispossessing them of title to their homes, which Plaintiffs explicitly ask this Court to vacate. Plaintiffs were given the opportunity to object and be heard and an opportunity to redeem their properties by paying their delinquent taxes. They also had the opportunity to appeal, in the state court system, the judgments of foreclosure entered by the circuit court, which at least some of the Plaintiffs attempted to do. Plaintiffs' relief was to be found within the state courts and, beyond that, with the United States Supreme Court, not with this Court.

No. 10-13708, 2011 WL 3438337 (E.D. Mich. Aug. 5, 2011); *see also, e.g.*, *Chebetar v. Wojtowicz*, No. 12-10359, 2012 WL 3639226, at *3 (E.D. Mich. June 4, 2012), *report and recommendation adopted*, 2012 WL 3648094 (E.D. Mich. Aug. 24, 2012); *Nassar El v. Smith*, No. 11-11957, 2012 WL 313985, at *1 (E.D. Mich. Jan. 31, 2012). Likewise here, the appropriate forum for Plaintiff to challenge the foreclosure of his property was in state court. Having missed the deadline to appeal there, he cannot ask this court to step in.

### C.  Res Judicata

Defendants also argue that Plaintiff's claims are barred by res judicata. (Mot. at 5–8.) Under Michigan law, a second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies. *Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222, 225 (Mich. 2001). The issues Plaintiff raises here were or could have been raised in the state court actions. For example, the Wayne County Circuit Court's denial of Plaintiff's motion for reconsideration addresses Plaintiff's arguments that he did not attend the foreclosure hearing because of Szymanski's representations, and that he sent the Treasurer a check for the back taxes but the Treasurer failed to credit his account. (*See* Dkt. 20-5 at 5.) The Court held that Plaintiff "was afforded due process by being provided notice of the judicial hearing by certified mail, by a personal

visit, by posting a notice on the property, and by publication in a newspaper." (*Id.* at 6.) Plaintiff's arguments about deficiencies in the state court proceedings themselves are also precluded by res judicata because they could have been raised on appeal. It is of no moment that Plaintiff's appeal was dismissed as untimely. Michigan courts apply the doctrine of res judicata broadly to bar arguments that could have been raised even if they were not raised in fact. *Sewell*, 621 N.W.2d at 225; *see also Givens*, 278 F. App'x at 609 (finding plaintiff's federal action barred by res judicata although his state court appeal was dismissed for failure to file a transcript of the lower court proceedings).

### D. Tax Injunction Act

Defendants also argue that the Amended Complaint should be dismissed pursuant to the Tax Injunction Act, 28 U.S.C. § 1341. (Mot. at 8.) The Court agrees. That Act "prohibits the district court from enjoining the assessment, levy or collection of taxes under state law where a plain, speedy, and efficient remedy may be had in state court," and the Sixth Circuit has held that it bars federal court challenges to state property tax foreclosures. *See Johnson v. Michigan Dep't of Treasury*, 211 F.3d 1269 (6th Cir. 2000).

### E. Remaining Arguments

The Wayne County Defendants also argue that the Amended Complaint should be dismissed for failure to state a claim, on grounds of immunity, and because they are "frivolous and improperly pled." (Mot. at 8–15.) Having found that the action is barred by the *Rooker-Feldman* doctrine, res judicata, and the Tax Injunction Act, it is not necessary to reach these arguments.

## III. CONCLUSION AND RECOMMENDATION

For all of the reasons discussed, there is no subject matter jurisdiction for Plaintiff's claims.

Accordingly, the Court RECOMMENDS that the Wayne County Defendants' Motion to Dismiss be GRANTED.

## IV.   FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  March 11, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 11, 2014.

s/Jane Johnson
Deputy Clerk
